# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br>**MOHAMMAD REZA ALAVI**<br>(Current address unknown)<br>*(Name and Address of Defendant)* | **AMENDED<br>CRIMINAL COMPLAINT**<br>CASE NUMBER: 07-3074M |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or between July 18, 2006 and October 10, 2006, in the District of Arizona and elsewhere, the defendant, MOHAMMAD ALAVI, knowingly and willfully exported and caused to be exported, from the United States to Iran, 3 KeyMaster software, without having first obtained the required authorization from the Secretary of the Treasury.

In violation of Title 50, United States Code, Sections 1702 and 1705, Executive Order Nos. 12959 and 13059, and Title 31, Code of Federal Regulations, Part 560.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

### See Attached Amended Statement of Probable Cause

Continued on the attached sheet and made a part hereof:   ☑ Yes   ☐ No

AUTHORIZED BY:  AUSA David A. Pimsner

Jason R. Cammack
Name of Complainant

Signature of Complainant

Sworn to before me and subscribed in my presence,

3-8-07
Date

at Phoenix, Arizona
City and State

Lawrence O. Anderson
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

AMENDED STATEMENT OF PROBABLE CAUSE

I, Jason R. Cammack, Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, do depose and state:

1. I am currently assigned to the Phoenix Division of the FBI and have been employed as a Special Agent for 2 ½ years. I have been assigned to the foreign counterintelligence squad for the entire 2 ½ years of employment. One of my investigative responsibilities is technology transfers to foreign governments.

2. Since October 2006, I have been involved in a technology transfer investigation initiated by the FBI involving Mohammad Reza Alavi (DOB June 11, 1957), a U.S. Naturalized Citizen formerly residing in Phoenix, Arizona.

3. I make this affidavit in support of the Government's complaint against Mohammad Alavi for a violation of Title 50, United States Code, Sections 1701-1705, the International Emergency Economic Powers Act (IEEPA).

4. Under the International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1705, the President of the United States has been granted the authority to deal with unusual and extraordinary threats to the national security, foreign policy or economy of the United States, where such an unusual and extraordinary threat has its source in whole, or in substantial part, outside the United States.

5. On May 6, 1995, President Clinton issued Executive Order 12959, pursuant to

IEEPA, prohibiting, *inter alia*, the export[1] and re-export of certain items of United States origin to Iran. On August 19, 1997, President Clinton issued Executive Order 13059, pursuant to IEEPA, to clarify the provisions of Executive Order 12959 and to consolidate prior Executive Orders pertaining to prohibited transactions with Iran. Under IEEPA, a trade embargo against Iran has continued to the present.

6. The United States Department of Treasury, Office of Foreign Assets Control ("OFAC") issued the Iranian Transactions Regulations ("ITR"), Title 31, Code of Federal Regulations, Part 560, which impose restrictions on trade with Iran. Under the ITR, unless otherwise permitted by law, the exportation, re-exportation, sale, supply, or transshipment, directly or indirectly by a United States person, of any goods, technology, or services to Iran is prohibited.

7. The 3 KeyMaster software is technology subject to the ITR and could not be exported or transshipped to Iran without first obtaining authorization from OFAC.

8. Mohammad Alavi had not been issued authorization from OFAC to export, re-export or transship the 3 KeyMaster software from the United States to Iran.

9. The Palo Verde Nuclear Generating Station (PVNGS) uses a complex simulator system to train employees on the operation of its nuclear reactors. PVNGS's

---

[1] Title 15 of the Code of Federal Regulations relates to Trade and Commerce. 15 C.F.R. § 772.1 provides definitions as they relate to the Exportation Administration Regulations (EAR) and states that "export means an actual shipment or transmission of items out of the United States." (See also § 734.2(b) of the EAR.)

Simulation Support Group (SSG) is responsible for maintaining, updating, and configuring the simulator system. The simulator system is capable of reproducing the current reactor status. An operator can artificially create various incidents to train employees on the proper procedures to follow. The system contains detailed information on the reactor control rooms as well as maps, drawings, schematics, and designs of PVNGS.

10. The simulator control system is made up of various software and hardware products which feed run-time and/or operator controlled data into the main simulator software called 3 KeyMaster. 3 KeyMaster is owned and licensed by Western Services Corporation located in Frederick, Maryland. PVNGS has been using the 3 KeyMaster product since the Spring of 2006.

11. In order to install the 3 KeyMaster software onto a computer at PVNGS the following steps need to be performed: A PVNGS employee must start an installation process on a computer that is physically located either on or off the PVNGS site. During the installation process, 3 KeyMaster displays an Authorization Code on the screen. The Authorization Code is a number calculated from a combination of the current date stamp and 'C' drive serial number of the installation machine. The user must then logon to Western Services' protected web site with his/her unique user name and password. Once login to the website is successful, the user enters the Authorization Code, the name of the person registering the software, a description of the computer on which the installation is being conducted, and other general information into a

form. If the Authorization Code is valid, a Registration Key is generated by Western Services. The user must then record and reenter the Registration Key into the 3 KeyMaster installation process to unlock the software for use under the terms of the license. An Authorization Code is valid and can only be used to obtain a Registration Key for a maximum of 24 hours. Therefore, a person must initiate and finish the installation process within 24 hours to obtain full access to the software program.

12. The software registration form on Western Services website defaults to "Charlie Oliver" as the name of the person registering the software. Charlie Oliver is an SSG employee at PVNGS that does the majority of software installations. All successful logins to Western Services protected website and all successful software registrations are logged by Western Services.

13. Mohammad Alavi, aka Mo Alavi, is an Iranian born U.S. Naturalized Citizen. Alavi was born in Tehran, Iran. He entered the United States on or about August 1976. He has worked in the SSG at PVNGS since approximately 1989. Alavi is a software engineer and has in-depth knowledge of PVNGS's simulator system.

14. On or about June 2006, Alavi asked SSG software engineer Charlie Oliver to provide him with a recommendation on what personal laptop Alavi should purchase. Oliver recommended a Dell laptop that had enough computing power to run the 3 KeyMaster software. Oliver was surprised at this request since Alavi had never been seen with a personal laptop at PVNGS before and Oliver did not believe Alavi had ever owned one. On or about late June 2006, Alavi mentioned to Oliver that he had purchased a

laptop.

15. On January 17, 2007, I reviewed credit card statements received pursuant to a federal grand jury subpoena from MBNA America Bank, Wilmington, Delaware, and determined that on June 7, 2006 account holder M. Alavi charged $1,490.23 on his MBNA Visa Platinum credit card for a purchase from Dell Marketing. Based on my training and experience, your affiant knows that Dell Marketing is in the business of selling computers and that the purchase amount is consistent with the price of laptop computer.

16. On or around the first week in June 2006, Alavi requested he be given access to the Western Services website. On or about June 5, 2006, Western Services received a request from PVNGS employee William Hendricsen to add Alavi to the list of authorized PVNGS employees who can access and register software from the Western Services website. A user name was created and Alavi was assigned a computer generated password. Western Services records show that on or about June 5, 2006, Alavi's user name and computer generated password were used to login to the Western Services website and change the computer generated password to a user specified password.

17. On or about mid July 2006, Alavi asked Oliver how to register the 3 KeyMaster software. Oliver showed Alavi the steps to take on Western Services' website to obtain a registration key. Oliver believed this was for valid PVNGS business reasons.

18. Western Services network records show Alavi's user name and password were used

to successfully logon to the Western Services protected customer web site and successfully download 3 KeyMaster software registration keys on July 18, 2006 and July 19, 2006.

19. Western Services records show that the Internet Protocol (IP) Address used to download registration keys on July 18, 2006 and July 19, 2006 were from IP Addresses normally used by PVNGS. On both dates, the registration information filled out by the user stated the person performing the registration was "Mo Alavi." The computers on which the software was installed were identified by the user as "Mo_pc" and "Admin" respectively. PVNGS has advised that these registrations were not authorized by PVNGS and the software programs were not installed on PVNGS authorized computers.

20. On a Monday, either July 17, 2006 or July 24, 2006, SSG employee Majid Saba observed Alavi working on a laptop inside PVNGS's simulator area. The laptop screen was showing the command view diagram from the 3 KeyMaster software. Saba stated to Alavi that it was good he finally bought a laptop so he could use the new Windows software at home. Alavi responded, "Yes."

21. On or about July 27, 2006, Alavi resigned from PVNGS. However, Alavi verbally told his supervisor approximately two weeks before that date that he was going to leave. Alavi's last day at PVNGS was approximately August 14, 2006. Alavi's PVNGS network access was terminated on or about August 25, 2006.

22. Western Services network records show Alavi's user name and password were again

used to successfully logon to the Western Services protected customer web site and successfully download a 3 KeyMaster software registration key on October 10, 2006. No one from PVNGS had informed Western Services that Alavi had resigned nor was Western Services instructed by PVNGS to remove Alavi's user name and password from its registration website.

23. The IP Address used to download the registration key on October 10, 2006 was logged as 84.47.215.172. The software registration information filled out by the user stated the person performing the registration was "charlie oliver." The computer on which the software was installed was identified by the user as "Admin." Charlie Oliver denies filling out a software registration form or conducting an install of 3 KeyMaster on October 10, 2006. Oliver also states that the default registration name is "Charlie Oliver." The person who registered the 3 KeyMaster software on October 10, 2006 had to retype the default name and replace the initial caps with lower case letters. PVNGS has advised that this registration was not authorized by PVNGS and the software was not installed on a PVNGS authorized computer. Therefore, based on my investigation, a person would have to be in possession of the 3 KeyMaster software and performing an installation of the software on October 10, 2006 to obtain a valid registration key.

24. An IP Address 'whois' search for 84.47.215.172 showed this IP Address is registered to Morva ISP and is located in Tehran, Iran. Morva ISP's address is No. 4, Mitra Tower, Kavosifar Street, Beheshti Ave., Tehran, Iran.

25. Alavi told several people, including his fellow SSG employees and his apartment landlord, that after he left PVNGS he was going to visit Iran for a few weeks and then return and look for a new job in the United States. Department of Homeland Security, Immigration and Customs Enforcement records show Alavi and his wife left the United States on August 16, 2006 on Lufthansa flight 451 departing Los Angeles International Airport.

26. On January 3, 2007, I reviewed records received pursuant to a federal grand jury subpoena from the Airlines Reporting Corporation and determined that on August 9, 2006, Mohammad Alavi purchased an airline ticket from Lufthansa Airlines for a flight leaving from Los Angeles International Airport (LAX) on August 16, 2006 at 6:40 p.m. to Frankfurt, Germany, and a connecting flight from Frankfurt leaving at 6:00 a.m. on August 17, 2006 to Tehran, Iran. The ticket was purchased with Alavi's Chase credit card. A review of Alavi's MBNA Visa Platinum and Chase credit card statements through November 2006 reveal that no other airline tickets were purchased with these accounts.

27. On March 1, 2007, I reviewed Bank of America checking account records for account holder Mohammad R. Alavi received pursuant to Federal Grand Jury subpoena. I observed that there was check cashing and deposit activity at a Bank of America branch in the Los Angeles, California area during the period of September 14, 2006, through December 18, 2006. I also observed ATM/Debit activity in the Phoenix, Arizona area on November 13 and 14, 2006. However, on March 1, 2007, Special

Agent Ryan Marvich, U.S. Immigrations and Customs Enforcement (ICE) conducted another check of the U.S. Immigration and Customs Enforcement (ICE) records. Those records do not show that Alavi has reentered the United States since his departure in August 2006.

28. On January 22, 2007, Special Agent Ryan Marvich of the U.S. Immigration and Customs Enforcement (ICE), provided the results of a license history check from the Office of Foreign Assets Control (OFAC) for Mohammad Alavi. The license history showed no OFAC licenses have ever been issued to Alavi.

29. Donald Utley, Corporate Counsel and Director of Contracts, Western Services Corporation, advised that the 3 Keymaster software, developed and owned by Western Services, is copyrighted. The software is also protected as a registered trade mark with the United States Patent Office under the name 3 Key Software. The software is not available to the public. Western Services keeps the software and software code secret by restricting the use of its software by paid licensees and by online registrations of each installation.

30. Western Services derives economic benefit from 3 KeyMaster software through license fees. Since the software is not available to the general public, Western Services also obtains substantial income from professional service fees associated with each license. Professional service fees are accrued by customizing the software for each installation site. Western Services derives further income from continuing maintenance and support fees collected on a yearly basis. Ownership of the software

9

remains with Western Services.

31. Based on the foregoing information, there is probable cause to believe that between July 18, 2006, and October 10, 2006 in the District of Arizona and elsewhere, Mohammad Reza Alavi, did willfully export and cause to be exported, from the United States to Iran, 3 KeyMaster software, without having first obtained the required authorization from the Secretary of the Treasury, in violation of Title 50, United States Code, Sections 1701-1705 the International Emergency Economic Powers Act. Your Affiant requests that a criminal complaint be authorized and warrant be issued for Mohammad Reza Alavi's arrest.

_____
Jason R. Cammack
Special Agent, Federal Bureau of Investigation


Subscribed and sworn to before me this 8th day of March, 2007:

_____
Honorable Lawrence O. Anderson
United States Magistrate Judge