**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,   )  | CR 07-429-PHX-NVW |
|                       )  |  |
| Plaintiff,         )  | **ORDER** |
|                       )  |  |
| vs.                   )  |  |
|                       )  |  |
| Mohammad Reza Alavi,  )  |  |
|                       )  |  |
| Defendant.         )  |  |
|                       )  |  |

The court has before it Defendant Mohammad Reza Alavi's (Alavi) Motion to Dismiss Count 1 of the Superseding Indictment. (Doc. # 150.) The United States charges Alavi with Export in Violation of Sanctions, pursuant to 50 U.S.C. §§ 1702 and 1705 of the International Emergency Economic Powers Act (IEEPA), Executive Order Nos. 12959 and 13059, and the Iranian Transactions Regulations (ITR), 31 C.F.R., Part 560. Alavi argues that Count I fails to state an offense and should be dismissed because the 3 KeyMaster software he allegedly exported to Iran was not prohibited from export and required no export license. The motion is governed by the law of our Circuit and will be denied for the following reasons.

The Bureau of Industry and Security (BIS) of the United States Department of Commerce regulates the export of dual-use commodities, which are commodities with predominantly commercial uses that also have military or proliferation applications. It does so through the Export Administration Regulations (EAR), 15 C.F.R. §§ 730–774. In

1  parallel, the Office of Foreign Assets Control (OFAC) of the United States Department of
2  the Treasury administers a comprehensive trade and investment embargo against Iran
3  using the ITR.  Under the embargo, "the exportation . . . from the United States, or by a
4  United States person, wherever located, of any goods, technology, or services to Iran or
5  the Government of Iran is prohibited." 31 C.F.R. § 560.204.
6       Alavi argues that no license was required to export the 3 KeyMaster software to
7  Iran because BIS designated the software "EAR99," a classification that is eligible for
8  "No License Required" designation under BIS regulations.  Alavi's argument fails
9  because even if it is true that BIS classifies the software "EAR99," authorization by the
10 OFAC is still required to export the software to Iran.  The OFAC has primary licensing
11 authority for exports to Iran.  "No person may export or reexport items subject to both the
12 [BIS's regulations] and OFAC's Iranian Transactions Regulations without prior OFAC
13 authorization."  15 C.F.R. § 746.7(3).  The Iran embargo includes "transactions dealing
14 with items subject to the EAR," *id.*, including commodities designated "EAR99," 15
15 C.F.R. §734.3(c) ("[I]tems subject to the EAR . . . [include those] designated as
16 'EAR99.'"  *See also* (doc. # 201, Ex. 1), INTRODUCTION TO THE COMMERCE
17 DEPARTMENT'S EXPORT CONTROLS 5, 8 (2006), *available at*
18 http://www.bis.doc.gov/licensing/bis_exports.pdf (explaining that a good designated
19 "EAR99" is not eligible for "No License Required" treatment "when a license
20 requirement applies because the destination is subject to embargo").
21      Alavi also argues that OFAC cannot prohibit the export of the 3 KeyMaster
22 software because it qualifies as "information and informational materials" and is therefore
23 excluded from export prohibitions by the IEEPA, 50 U.S.C. § 1702(b)(3), which is the
24 statutory basis for the embargo created by the ITR.  The "information and informational
25 materials" exclusion "was designed to prevent the executive branch from restricting the
26 international flow of materials protected by the First Amendment." *Kalantari v. NITV,*
27 *Inc.*, 352 F.3d 1202, 1205 (9th Cir. 2003).  Reflecting this concern, the statute contains a
28 nonexclusive list of such materials that includes "publications, films, posters, phonograph

- 2 -

records, photographs, microfilms, microfiche, tapes, compact disks, CD ROMs, artworks, and news wire feeds." § 1702(b)(3).  It is true that software source code is speech subject to First Amendment protections.  However, BIS and OFAC's control on exporting nuclear reactor simulation software would withstand intermediate scrutiny, which is appropriate for export prohibitions that are based on the function, not the expressive content, of computer source code.  *See United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1125–37 (N.D. Cal. 2002) (upholding an anti-trafficking measure for software under intermediate scrutiny).  It is most implausible that Congress intended to include nuclear reactor simulation software in the information exclusion.

Additionally, a commodity does not qualify as excepted "information and informational materials" if it was controlled for export under sections 5 or 6 of the Export Administration Act to promote nonproliferation or antiterrorism.  *Id.*; 31 C.F.R. § 560.210(c).  Articles that were controlled for export under such authority were listed on the BIS's Commerce Control List (CCL), 15 C.R.F. § 774.  The list includes equipment related to nuclear reactors, including "[s]imulators specially designed for 'nuclear reactors.'" § 774, Supp. 1, Export Control Classification Number (ECCN) 2A291.  Furthermore, the list includes "'[s]oftware' specially designed or modified for the 'development,' 'production' or 'use' of" equipment related to nuclear rectors.  ECCN 2D290.

The United States alleges that the 3 KeyMaster software Alavi exported to Iran is unique to Palo Verde Nuclear Generating Station in that it contains detailed information of the reactor control room, as well as detailed process and other technical data.  The Department of Commerce has issued a certified licensing determination that the "3 KeyMaster software simulator specifically designed for the Palo Verde Nuclear Generating Station is . . . classified under Export Control Classification Number (ECCN) 2D290."  (Doc. # 167, Ex C.)  Whether a specific item is on the CCL is a political question delegated exclusively to the Department of Commerce; the factual basis for the agency's decision on that issue is not subject to judicial review, and a specific item's

1  status on the CCL is neither an element of the crime nor a defense to a charge of violating
2  the Department of Commerce's export controls. *United States v. Mandel*, 914 F.2d 1215
3  (9th Cir. 1990) (reaffirming *United States v. Spawr Optical Research, Inc.*, 864 F.2d
4  1467, 1472 (9th Cir. 1988)); *United States v. Helmy*, 712 F. Supp. 1423, 1434 (E.D. Cal.
5  1989) *cited with approval in Mandel*, 914 F.2d at 1223 n.14.  A fortiori, it is not a defense
6  to the charge of violating the OFAC administered Iran embargo simply because an
7  exception to an exception to those regulations refers to an item's status on the Department
8  of Commerce's CCL.  Accordingly, the 3 KeyMaster software allegedly exported by
9  Alavi was listed on the CCL, did not qualify as "information or informational materials,"
10 and did require export authorization from OFAC at the time of Alavi's alleged
11 exportation.
12       Alavi points out that the Department of Commerce issued its licensing
13 determination on April 18, 2008, after the alleged offense conduct and on the eve of trial.
14 He therefore argues that the Ex Post Facto Clause, U.S. Constitution, art I. §10, prohibits
15 applying the determination to support the indictment against him.  The ex post facto
16 prohibition prohibits retrospective application of a law where such application will
17 "'disadvantage the offender affected by it' by altering the definition of criminal conduct
18 or increasing punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)
19 (citations omitted).  The licensing determination, however, did not alter the definition of
20 any criminal conduct.  ECCN 2A291 and 2D290 were on the Commerce Control List
21 prior to Alavi's alleged export of the software.  The Department of Commerce merely
22 determined that the ECCN 2D290 applies to the specific software that he is charged with
23 exporting.  The agency can properly determine that an item that has already been
24 exported was on the CCL and therefore required a license at the time of export.  Were that
25 not the case, an exporter who simply exported an item without requesting a licensing
26 determination would be immune from sanctions.
27       The Department of Commerce's April 18, 2008 licensing determination does not
28 conflict with the previous determination that it provided to the manufacturer of the

- 4 -

software on June 17, 2006, classifying the software as "EAR99." (Doc. # 201, Ex. 4.) That earlier determination did not indicate that it applied to the customized version of the software used at Palo Verde Nuclear Generating Station.  Furthermore, the indictment's allegation that Alavi exported "3 KeyMaster software" was sufficient.  The indictment did not need to allege that Alavi exported a specially designed or modified version of the software because that is not an element of the offense charged.  *See United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) ("An indictment will withstand a motion to dismiss 'if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge.'").  It is beyond question that Alavi has understood all along that he is charged with exporting the version of the 3 KeyMaster software used at Palo Verde Nuclear Generating Station.

IT IS THEREFORE ORDERED that  Defendant Mohammad Reza Alavi's Motion to Dismiss Count 1 of the Superseding Indictment (doc. # 150) is denied.

DATED this 5th day of May, 2008.

_____
Neil V. Wake
United States District Judge